2021 IL App (1st) 181509-U

FIFTH DIVISION
Order filed: January 22, 2021

No. 1-18-1509

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 01 CR 690 |
| | ) | |
| WILLIAM WARD, | ) | Honorable |
| | ) | Carl B. Boyd, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Delort and Justice Cunningham concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's denial of the defendant's third successive postconviction petition at the third stage of proceedings.

¶ 2    The defendant, William Ward, appeals from an order of the circuit court of Cook County, denying his third successive postconviction petition filed pursuant to the Post–Conviction Hearing Act (Act) (725 ILCS 5/122 *et. seq.* (West 2012)) after a third-stage evidentiary hearing. On appeal,

he contends that the circuit court erred when it denied repeated discovery requests. For the reasons that follow, we affirm.

¶ 3    The following facts and procedural history were derived from the limited record, the parties' briefs on appeal, and the prior decisions of this court.

¶ 4    The defendant was charged by indictment with, *inter alia*, attempted first-degree murder and aggravated battery with a firearm, stemming from the shootings of Michael Walker and J.C. Johnson in Harvey, Illinois, on September 24, 2000.

¶ 5    At trial, Harvey Police Officer Montague Hall testified that, on September 24, 2000, he responded to a call of shots fired in an alley around 150th Street and Honore Avenue. At the scene, Officer Hall recovered two bullet casings. He spoke with Johnson, who was lying on the ground, having been shot in the leg. Officer Hall also spoke with James Tolbert and Terrance Coprich, who provided him with descriptions of two possible offenders. Officer Hall recorded the descriptions of both offenders as "male Black, unknown height, unknown weight, unknown complexion."

¶ 6    Harvey Police Detective Samuel White testified that he interviewed Tyrone Moten on October 29, 2000, and subsequently began to look for the defendant. On November 17, 2000, he went to the defendant's residence and knocked on the door, but no one answered. As Detective White turned to leave, he saw the defendant driving toward the house. Detective White made eye contact with the defendant, who then drove away. He pursued the defendant to 164th and Halsted, where the defendant exited his car. Detective White attempted to take the defendant into custody and the defendant punched him. Detective White was able to subdue the defendant and take him into custody.

¶ 7　　Detective White returned to the defendant's home with an Illinois Department of Corrections (IDOC) parole agent. Detective White watched the agent search the bedroom, where he recovered a safe and ammunition. At the police station, they opened the safe and discovered a loaded gun, ammunition, and a magazine. Later, Detective White met with Walker and presented him with a photo array. He testified that Walker identified another individual as the shooter.

¶ 8　　Terrence Coprich, a convicted felon, testified that on September 24, 2000, he was in the backyard of James and Michael Tolbert's house at 150th and Honore. At some point, he, Moten, and others drove to 158th and Vine Streets. There, Moten, a woman named Sakina, and the defendant got into a physical altercation. The defendant ran to the back of the house at 158th and Vine. Moten picked up a brick and used it to shatter the windows of the defendant's truck and take a hat worth $150 from the front seat. Coprich's group then returned to the Tolberts' residence.

¶ 9　　After returning to the Tolberts' home, Coprich and some others decided to get some beer. He walked towards his car in front of the house, where he noticed a gray station wagon "ride by" with the defendant sitting in the front passenger seat of the vehicle. Coprich and the others got into his car and followed the station wagon. Coprich turned into the alley adjacent to the Tolbert residence to warn his friends who were gathered there. However, as he approached them, the station wagon entered the alley from the other direction. Coprich again saw the defendant and another man in the station wagon as the cars were "side to side" with the passenger doors right next to each other. He then saw the defendant shoot across the driver's seat of the station wagon. Coprich drove away from the scene, but then returned to check on his friends. On November 19, 2000, Coprich viewed a lineup at the Harvey Police Department where he identified the defendant as the shooter.

¶ 10    On cross-examination, Coprich testified that, on the same day he observed the lineup, he gave a statement to Detective White and ASA Alzetta Bozeman. He explained that he declined to write the statement out himself, leaving it to ASA Bozeman to record what he said; however, he checked over her recording of his statement, made no corrections, and signed it, along with Detective White and ASA Bozeman.

¶ 11    Forensic scientist Jeffrey Parise was the final witness for the State. After being qualified as an expert in firearms identification, Parise testified that he conducted testing on the recovered casings and the firearm found in the safe in the defendant's bedroom. He stated that he formed the opinion to "a reasonable degree of scientific [and] technical certainty" that the casings recovered by the police at the scene of the shooting had been fired from the gun recovered from the defendant's bedroom, "to the exclusion of all others."

¶ 12    During deliberations, the jury sent several notes to the court, requesting both the "written Statement from Terrance Coprich and also a transcript of his testimony ***." Each time, the circuit court responded by telling the jury to consider only the exhibits they had already received and their recollection of the testimony. Eventually, the jury reached a verdict, finding the defendant guilty on both counts of aggravated battery with a firearm. The jury also found that Johnson and Walker both suffered severe bodily injury. After a sentencing hearing, the court sentenced the defendant to consecutive terms of 20 and 15 years' imprisonment.

¶ 13    On direct appeal, the defendant argued, *inter alia*, that his trial counsel was ineffective for failing to introduce Coprich's handwritten statement into evidence, "or to otherwise clarify the information contained in the statement." *People v. Ward*, 371 Ill. App. 3d 382, 435 (2007). We affirmed the defendant's conviction and sentence, finding that his trial counsel was not ineffective

because the decision to not introduce the handwritten statement was not "objectively unreasonable" and did not result in prejudice. *Id.*

¶ 14 The defendant's postconviction procedural history is lengthy and convoluted. Therefore, we include only the facts relevant to the issue on appeal.

¶ 15 On March 30, 2007, the defendant filed his initial *pro se* postconviction petition pursuant to the Act, which he subsequently amended several times. His initial petition was dismissed by the circuit court on the State's motion. The defendant filed an appeal, but his appeal was dismissed due to his failure to return the record to the appellate court. *People v. Ward*, No. 01-09-3349 (2010) (dispositional order).

¶ 16 On January 2, 2013, the defendant sought leave to file a successive *pro se* postconviction petition pursuant to the Act, in which he asserted newly discovered evidence showing that he was never admonished regarding the required three-year term of mandatory supervised release (MSR). He requested that his sentence be reduced to 32 years' imprisonment. The circuit court denied him leave to file the petition, and on appeal, we granted the state appellate defender's motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). *People v. Ward*, 1-13-1082 (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 17 On August 1, 2013, the defendant attempted to file his second successive *pro se* postconviction petition pursuant to the Act. This petition was once again predicated on a claim that the MSR term was improper. The circuit court denied the defendant's petition because he did not request leave of court to file it, as is required by the Act. On May 14, 2014, we granted appellate counsel's motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). *People v. Ward*, 1-13-3370 (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 18    On June 29, 2015, the defendant sought leave from the circuit court to file his third successive *pro se* postconviction petition pursuant to the Act, raising a claim of actual innocence based on the testimony of Richard Listenbee and Richard Tyson. The defendant attached affidavits from both Listenbee and Tyson, who both averred that they were present at the scene of the shooting, saw the face of the shooter, and the shooter was not the defendant.

¶ 19    On January 28, 2016, the defendant filed a *pro se* "Motion for Evidentiary Hearing Based on Due Process Violations," arguing that his claims should advance to a third-stage evidentiary hearing because the State failed to timely file a motion to dismiss his petition. The motion referenced his claim of actual innocence and also faulted his trial counsel for failing to "investigate the crime scene" because, if he had, he would have learned of the existence of Listenbee and Tyson.

¶ 20    On May 20, 2016, the State filed its answer to the defendant's third successive postconviction petition, agreeing that his claims of actual innocence should advance to a third-stage evidentiary hearing. The State also filed a motion to dismiss the defendant's claim raised in his motion for an evidentiary hearing that his trial counsel was ineffective for failing to investigate and discover the existence of Listenbee and Tyson. The State argued that the claim was waived and barred under *res judicata* and also that the claim should be dismissed because the defendant could not establish prejudice.

¶ 21    On July 8, 2016, the defendant filed several motions with the circuit court. Relevant to this appeal, he filed a motion for discovery, seeking the production of Coprich's written statement that was given to Detective White and ASA Boseman. According to the defendant, Coprich's statement indicated that he knew the defendant for several months prior to the shooting, which contradicted statements made by the ASA during trial and is inconsistent with the description Coprich allegedly

provided to Officer Hall of an unknown black male. He alleged that the State and his trial counsel withheld Coprich's written statement from him in violation of Illinois Supreme Court Rule 412 (Ill. S. Ct. R. 412 (eff. July 1, 1982)) and his constitutional right to confront his accuser. He also alleged that his trial counsel's failure to introduce the written statement into evidence amounted to ineffective assistance of counsel.

¶ 22    On July 29, 2016, the circuit court entered an order advancing the defendant's actual innocence claim to a third-stage evidentiary hearing and also granting the State's motion to dismiss the defendant's claim that his counsel was ineffective for failing to investigate witnesses.

¶ 23    On September 15, 2016, the defendant filed an amended third successive *pro se* postconviction petition, adding two witnesses in support of his actual innocence claim: Enoch McCottrell and Michael Tolbert. In addition to the affidavits from Tyson and Listenbee, the defendant attached two affidavits from McCottrell in which he averred that he was present at 150th and Honore on September 24, 2000, he saw the shooting, and the shooter was not the defendant. The defendant did not include an affidavit from Tolbert, but in the petition, he stated that Tolbert would testify similar to McCottrell.

¶ 24    On February 27, 2017, the defendant filed a second amendment to his third successive *pro se* postconviction petition, adding a claim of ineffective assistance of counsel based on his trial counsel's failure to inform him of the consequences of not accepting a plea offer. The defendant argued that his trial counsel informed him of a possible plea deal but did not inform him of several details, such as that he would have to serve 85% of his sentence, the State sought an "extended" term sentence, and he would have to serve his sentences consecutively. The defendant also amended his petition to reflect that his actual innocence claim would proceed with only one

witness, Tyson, because records showed that both McCottrell and Listenbee were incarcerated on the date of the shooting.

¶ 25    On April 18, 2017, the defendant filed a "Motion for Pretrial Discovery," requesting that the court order the clerk of the circuit court to send him a copy of Coprich's written statement. He argued that he was not able to cross-examine Coprich on his identification evidence at trial because the "State's Attorney who prosecuted him failed to submit Coprich's prior handwritten statement into evidence at [his] trial which is a violation of the court's ruling in *Brady v. Maryland*." He also argued that the State committed reversible error when the ASA stated at trial that Coprich did not know the defendant before the night of the shooting, which is contradicted by the contents of Coprich's written statement.

¶ 26    On April 28, 2017, the State agreed to advance the defendant's claim that his counsel was ineffective for failing to inform him of the consequences of rejecting the State's plea deal to an evidentiary hearing along with the actual innocence claim based on Tyson's testimony.

¶ 27    On June 2, 2017, the State and the defendant appeared before the circuit court to address, *inter alia*, the defendant's motion for discovery. The defendant reiterated his desire for Coprich's statement, accusing both his trial counsel and the State of failing to admit the statement into evidence and depriving him of the ability to cross examine Coprich on his alleged prior inconsistent statement. The State responded that the defendant's petition was at the third stage and, therefore, any additional issues must be raised in a new petition. The state also noted that there is no right to discovery in postconviction proceedings. The defendant replied that he could not amend his petition until he received the written statement. The court denied the defendant's motion for discovery, stating that the defendant was attempting to raise "something new" and "outside" of the

two claims that had advanced to the third stage. The court then set the matter for a third-stage evidentiary hearing on the defendant's two remaining claims: actual innocence and ineffective assistance of counsel for failing to inform him of the consequences of rejecting the State's offered plea deal.

¶ 28    On July 10, 2017, the defendant again amended his third successive *pro se* postconviction, adding Michael Bradley as a witness in support of his actual innocence claim. The defendant attached an affidavit from Bradley in which he averred that he was present at the scene and the shooter was not the defendant.

¶ 29    On August 4, 2017, the defendant filed three motions. The first was a motion to reconsider the court's denial of his "Motion for Pretrial Discovery," arguing that the claim he raised in his motion for pretrial discovery, that the ASA committed reversible error at his trial, falls under the "due process claim" he raised in his amended petition. The second motion filed by the defendant that day was entitled "Subpoena," in which he requested an order compelling the State to produce a copy of Coprich's handwritten statement. In this motion, the defendant alleged that the State violated Illinois Supreme Court Rule 412 and section 3500(d) of the Federal Rules of Criminal Procedure (18 U.S.C. § 3500 (2000)) by failing to offer Coprich's written statement into evidence at trial. He also alleged that his counsel violated section 5/155-10.1 of the Code of Criminal Procedure (725 ILCS 5/115-10.1 (West 2000) by failing to offer Coprich's statement into evidence at trial. The final motion filed by the defendant on that date was a motion to dismiss his indictment, which asked the court to enter an order "release[ing] him from custody immediately" based primarily on the same allegations he raised in the motion for a subpoena.

¶ 30    On August 25, 2017, the circuit court entered an order denying both the defendant's motion to dismiss the indictment and his motion to reconsider the court's denial of his motion for discovery.

¶ 31    On October 23, 2017, the defendant filed another round of motions, including: a motion to subpoena several witnesses, including Coprich; a motion for a subpoena for Grand Jury transcripts and eyewitness handwritten statements, including Coprich's; a motion for the court reporter to read back the in-court transcripts from the court proceedings; and a motion to reconsider his "Motion to Dismiss the Indictment." On December 11, 2017, the defendant sent the clerk of the circuit court of Cook County a letter and a record search request, requesting a copy of Coprich's statement.

¶ 32    On January 19, 2018, the circuit court entered an order: (1) denying his motion to subpoena Coprich; (2) denying his motion to reconsider its denial of his motion to dismiss the indictment; and (3) denying his December 11, 2017 record request.

¶ 33    On March 9, 2018, the circuit court held a third-stage hearing on the defendant's actual innocence claim and his claim that his trial counsel was ineffective for failing to inform him of the consequences of rejecting the State's plea deal. At the hearing, the defendant presented the following witnesses: Tom Justic (his trial counsel), Bradley, and Tyson. Justic testified that he did not remember any specific conversations with the defendant regarding a plea deal, but he was certain that he would have discussed any plea offer with him because that is his standard practice. On cross-examination, he explained that his standard practice was to discuss the sentencing range, consecutive and concurrent sentences, and whether his client was extendable.

¶ 34    Bradley testified that, on September 24, 2000, he was present in the alley at 150th and Honore, when he saw a grey station wagon drive through the alley with "two husky, black dark skinned dudes with dreads" inside. The car stopped near a group standing in the alley and he saw the passenger reach over the driver and open fire. He testified that he did not see the person who shot the victims in the courtroom. On cross-examination, Bradley admitted that he was presently incarcerated for home invasion and aggravated criminal sexual assault with a weapon. He also admitted that that, on September 24, 2000, he was 14 years old.

¶ 35    Tyson testified that, on September 24, 2000, he was walking his dogs near the alley at 150th and Honore when he saw a car drive down the south part of the alley and come to a stop. He observed two individuals he knew as "Little Man" and "Jake" have an argument with the people in the car. He then saw a "dark skinned guy with braids in his hair" lean over the driver of the car and shoot out the window. He testified that the shooter was not the defendant. Tyson admitted that he takes psychotropic medication to treat his bipolar schizophrenia. He stated that, if he does not have his medicine at a particular time, he becomes delusional and starts "thinking things that are not there." On cross-examination, Tyson acknowledged that he was visited by an ASA and an investigator. He denied telling them that he did not know the defendant and that he did not write an affidavit on his behalf. According to Tyson, when he spoke with the ASA, he "was off [his] psych meds" and did not understand what the conversation was about. At the conclusion of Tyson's testimony, the defendant rested, and the case was continued.

¶ 36    On May 23, 2018, the defendant filed a motion for an in-camera inspection of Coprich's written statement, arguing that he needed the statement so that he could add his claim that the ASA committed reversible error at his trial to his third successive *pro se* postconviction petition. The

circuit court denied the defendant's motion for an in-camera inspection of Coprich's statement, stating that this issue had been "previously discussed" and denied on multiple occasions.

¶ 37    On June 1, 2018, the defendant's evidentiary hearing resumed. The State called Richard Lombard, an investigator with the Cook County State's Attorney, who testified that, on January 22, 2016, he and ASA Gina Savini went to Stateville Correctional Center and interviewed Tyson. Lombard testified that Tyson told him during the interview that he did not know the defendant, did not sign an affidavit, and did not witness a shooting in Harvey, Illinois. Lombard also testified that Tyson agreed to be videotaped during the conversation. The State offered the video into evidence and it was published in court.[1]

¶ 38    On June 1, 2018, the circuit court denied the defendant's third successive *pro se* postconviction petition, finding that he failed to prove his claims by a preponderance of the evidence. Regarding his claim of ineffective assistance of counsel, the court stated that it was "not convinced that counsel's representation fell below any objective standard of reasonableness; therefore, there was no prejudice to the defendant." Regarding his actual innocence claim, the court stated that Bradley and Tyson "lacked all indicia of credibility." This appeal followed.

¶ 39    On appeal, the defendant does not challenge the circuit court's decision to deny his third successive *pro se* postconviction after a third-stage evidentiary hearing; rather, he contends that the circuit court erred when it denied his repeated requests to obtain Coprich's written statement.

¶ 40    Initially, we note that our review in this case is complicated by the incomplete record filed on appeal. The defendant filed only that portion of the record detailing the events that followed his third successive postconviction petition. In his brief, he asserts that the remaining 15-volume

---

[1] A copy of the recording was not included in the record on appeal.

record is available to this court because it was filed in a prior appeal (case no. 1-17-2370). However, the record filed in that case was returned to the circuit court of Cook County on November 23, 2020, and, therefore, available for filing by the defendant in this case. We remind the defendant that the appellant bears the burden of providing a sufficiently complete record "so that the reviewing court is fully informed regarding the issues to be resolved," and "in the absence of a complete record on appeal, it is presumed that the trial court's judgment conforms to the law and has a sufficient factual basis." *People v. Odumuyiwa*, 188 Ill. App. 3d 40, 45 (1989).

¶ 41 The parties disagree on the standard of review this court should employ. The defendant argues that we should review the issue *de novo* because his requests came after he was granted leave to file his third successive postconviction petition, and therefore, "the issue on appeal is not one of whether leave to file should have been granted but whether [the defendant's] Coprich-related claims should also have advanced." Essentially, he faults the circuit court for failing to treat his various motions seeking to obtain Coprich's statement as amendments to his third successive postconviction petition.

¶ 42 The State responds that the defendant never raised any of his "Coprich-related claims" in a recognizable postconviction pleading, but, rather, he alluded to them in multiple motions for discovery and a motion to dismiss his indictment. As such, the State argues that the correct standard of review is whether the circuit court abused its discretion, which is the standard this court employs when reviewing a circuit court's ruling on a request for postconviction discovery, a motion to dismiss an indictment, or an evidentiary motion. We agree with the State.

¶ 43 The record establishes that the defendant did not raise his so-called "Coprich-related claims" in either his third successive *pro se* postconviction petition or in the various amendments

to that petition he filed with the circuit court. Instead, he chose to file several motions for discovery in order to obtain a piece of evidence that he believed he needed before he could raise a Coprich-related claim. Thus, by his own admission, the defendant was not raising a new claim, he was simply seeking evidence that would support claims he hoped to raise. Essentially, the defendant faults the circuit court for taking him at his word as to which claims he wished to raise in his third successive postconviction petition and which claims were not yet ready to be raised. However, the circuit court was under no obligation to recharacterize the defendant's *pro se* motions. *People v. Stoffel*, 239 Ill. 2d 314, 324, 941 N.E.2d 147, 154 (2010) ("[A] trial court has no obligation to recharacterize a *pro se* pleading pursuant to the Act.").

¶ 44     The discovery rules for neither civil nor criminal cases apply to proceedings under the Act. *People ex rel. Daley v. Fitzgerald,* 123 Ill. 2d 175, 181-83 (1988). Nonetheless, the circuit court has inherent discretionary authority to order discovery in postconviction proceedings. *Id.* at 183. The circuit court should allow discovery only after the moving party demonstrates "good cause" for a discovery request. *Id.* We will not disturb a circuit court's denial of a request for discovery in postconviction proceedings absent an abuse of discretion. See *People v. Henderson,* 171 Ill. 2d 124, 156 (1996). An abuse of discretion occurs only where the circuit court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it. *People v. Lerma*, 2016 IL 118496, ¶ 23.

¶ 45     After review, we conclude that the circuit court did not abuse its discretion when it denied the defendant's discovery motions requesting Coprich's statement. In the only oral pronouncement contained in the record addressing one of the several discovery motions filed by the defendant, the circuit court stated that it denied the defendant's motion because, by his own acknowledgement,

his efforts to obtain Coprich's statement were in service of raising new postconviction claims and not germane to the two claims already set for a third-stage evidentiary hearing. The record establishes that, when the defendant filed his motion for discovery, his third successive postconviction petition had been pending for several years, he had already filed several amendments, and his two surviving claims were set for an evidentiary hearing. Given these circumstances, we cannot say that the circuit court' decision was arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it.

¶ 46    For these reasons, we affirm the judgment of the circuit court of Cook County.

¶ 47    Affirmed.